John A. EGLI and Margaret
L. Egli, Appellees,

v.

Todd M. TROY, Diana J. Troy, Joseph
Ranson a/k/a Joseph H. Ranson, Jr.,
and Diane Ranson a/k/a Diane C. Ran-
son, Appellants,

v.

Rosemary E. Greve, Appellee.

No. 98–831.

Supreme Court of Iowa.

Nov. 17, 1999.

Les V. Reddick, Todd L. Stevenson, and D. Flint Drake of Kane, Norby & Reddick, P.C., Dubuque, for appellants.

William C. Fuerste of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellees John A. Egli and Margaret L. Egli.

Timothy J. Healy, Farley, for appellee Rosemary E. Greve.

Considered by McGIVERIN, C.J., and LARSON, CARTER, CADY, and ANDREASEN,* JJ.

LARSON, Justice.

When these plaintiffs, the Eglis, discovered a home being built on land they thought was theirs, they brought an action against the parties building the house, the Troys, as well as other adjoining neighbors, the Ransons, who the Eglis claim were also asserting dominion over some of the Egli land. The Eglis' action was brought under Iowa Code chapter 650 (1995) to establish ownership of the land by acquiescence.

The Troys and Ransons brought in their seller, Rosemary Greve, on a third-party petition asserting breach of a special warranty deed given to the Ransons (who later conveyed part of it to the Troys). The district court, Robert J. Curnan, Judge, entered summary judgment against the Troys and Ransons on their third-party claim against Mrs. Greve. Later,

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

the court, Lawrence H. Fautsch, Judge, ruled in favor of the Eglis on their claim that the property in question was bounded by a fence line. This is so, according to the court, because the fence line had been established for over ten years and the adjoining owners had acquiesced in the fence as a boundary. We affirm the acquiescence ruling but reverse the summary judgment in favor of the third-party defendant.

## I. *Facts.*

Two parcels of land in Dubuque County are involved. Both are shaped as right triangles, and both are located on the east side of a common fence line, forming the hypotenuse for both triangular tracts. The tracts, whose right-angle legs are shown with heavy marking on the attached plat, are designated on the plat as "disputed area 1" and "disputed area 2." The house is being built in disputed area 1.

The Eglis claim they own the two tracts because they and their predecessors on the east side of the fence have treated the fence as the boundary, and the Troys, Ransons, and their predecessors on the west side of the fence have acquiesced in that boundary line for over ten years. *See* Iowa Code § 650.14.

Rosemary Greve, who gave a special warranty deed to the Ransons, was brought in as a third-party defendant. The extent of her liability under that deed is discussed in the following division.

## II. *The Special Warranty Deed.*

When the Ransons purchased their property from Elmer and Rosemary Greve in 1988, part of it was purchased for cash, with a warranty deed, and the balance was purchased on an installment contract. The contract was paid off in 1996. In the meantime, Elmer Greve had died. When the Ransons paid off the contract, a court officer's deed was given to convey Elmer's share of the land to the Ransons. Rosemary Greve conveyed her interest by the special warranty deed now at issue. The deed provided in part:

> Grantors do Hereby Covenant with Grantees and successors in interest to Warrant and Defend the real estate against the lawful claims of all persons claiming by, through or under them, except as may be above stated.

The Ransons, relying on the covenants of this deed, seek protection in the event they lose on the Eglis' claim of title by acquiescence. The district court granted Greve's motion for summary judgment, ruling that Greve could not be held liable under any covenants of the deed because the suit by the Eglis was not a claim by "persons claiming by, through or under" her.

Special warranty deeds such as this, covenanting only against liens or encumbrances by the seller, are commonly used to convey legal title on satisfaction of an installment real estate contract.

> Under a contract for a deed the vendee is customarily in possession for a number of years before the deed is executed. He is thus in a position to make and suffer liens and other encumbrances upon the property. The vendor in his deed naturally does not want to warrant that the title is free from such liens. If a general deed form, and not the special form warranting only for the acts of the grantor, is used, it is recommended that a statement similar to the following be added to the deed in the space for listing encumbrances:
>
> ... that they are free from incumbrances *except as to any liens or incumbrances created or suffered to be created by the acts or defaults of the grantee.*

1 Marlin M. Volz, Jr., *Iowa Practice* § 7.32, at 163 (3d ed.1996).

We have not previously considered special warranty deeds under similar circumstances. The parties cite an old Iowa case, *Funk v. Creswell,* 5 Iowa 62 (1857), which discussed various types of warranties in deeds but lends no help in this case. Nor

do any other Iowa cases. Other courts, however, have discussed the role of special warranty deeds. The North Dakota Supreme Court has stated, "under a special warranty deed a grantor is liable if the grantee's ownership is disturbed by some claim arising through an act of the grantor." *Stracka v. Peterson,* 377 N.W.2d 580, 583–84 (N.D.1985). In *Central Life Assurance Society v. Impelmans,* 13 Wash.2d 632, 126 P.2d 757, 763 (1942), the Washington Supreme Court held a special warranty deed normally warrants title only against claims held by, through, or under the grantor, or against incumbrances made or suffered by him, and it cannot be held to warrant title generally against all persons. The Arkansas Supreme Court has stated a special warranty deed "simply warrants the title against all defects therein done *or suffered by* the grantor." *Reeves v. Wisconsin & Arkansas Lumber Co.,* 184 Ark. 254, 42 S.W.2d 11, 12 (1931) (emphasis added).

■ The issue before us is whether a grantor who has allegedly acquiesced in the establishment of an encumbrance on real estate is responsible for a claim "by, through or under" the vendor, as these third-party petitioners claim. We believe the warranty in this case covers claims permitted by the vendor as well as those affirmatively created by her. If that were not so, encumbrances such as mechanics' liens, which are imposed by others, would be excluded from the warranty. We do not believe that would be a reasonable interpretation of the warranting language.

The third-party defendant, Greve, does not appear to challenge this as a legal proposition or claim an acquiescence cannot constitute a breach of warranty under such a deed. She argues principally that, even assuming acquiescence can give rise to a claim covered by the warranty, any title acquired by her neighbors across the fence through acquiescence occurred long before she and her husband acquired title in 1964. Therefore, according to her, any acquiescence in the boundary line during

the time the Greves owned the property would be irrelevant.

The acquiescence, if any, cannot be pinpointed in terms of time. In fact, the district court, in denying the Eglis' motion for summary judgment (in which they attempted to fix a pre–1964 acquiescence as a matter of law) stated, "the court cannot find as a matter of law that the boundaries were established by acquiescence prior to the Greves' 1964 purchase of the . . . property." We agree; the third-party petitioners should be permitted to show when, with respect to the Greves' ownership, the acquiescence occurred.

■ We hold that the special warranty deed warranted against claims arising through acquiescence by the Greves as well as any affirmative acts by them. A genuine issue of material fact was generated as to whether the Greves were responsible for any part of the ten-year period of acquiescence. It was therefore error for the court to grant summary judgment in favor of Greve. We reverse and remand for further proceedings on the third-party petition.

### III. *The Court's Finding That the Fence Line Was Established by Acquiescence.*

■ An action under Iowa Code chapter 650 to establish a boundary is considered on appeal as an ordinary action. Iowa Code §§ 650.4, 650.15. The district court's judgment has the effect of a jury verdict, and on appeal the only inquiry is whether the findings are supported by substantial evidence. *Ollinger v. Bennett,* 562 N.W.2d 167, 170 (Iowa 1997). The Troys and Ransons argue that the record does not meet that test. They argue that the fence in question was only a barrier, apparently for grazing livestock, and not intended to be a boundary. *See Brown v. McDaniel,* 261 Iowa 730, 735, 156 N.W.2d 349, 352 (1968).

■ Under Iowa Code section 650.14,

[i]f it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established.

"Acquiescence" is defined as

"the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them. Acquiescence exists when both parties acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed."

*Ollinger*, 562 N.W.2d at 170 (quoting *Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980)). The adjoining landowners or their predecessors must have knowledge of and consent to the asserted property line as a boundary. *Tewes v. Pine Lane Farms, Inc.*, 522 N.W.2d 801, 806 (Iowa 1994).

■ A party seeking to establish a boundary other than a survey line must prove it by "clear" evidence. *Id.; see* 11 C.J.S. *Boundaries* § 74, at 143 (1995) ("Inasmuch as the ownership of land is affected so far as the agreed line varies from the true line, the proof of the agreed location should be clear."). We apply the clear-evidence standard in reviewing this case.

■ Acquiescence may be inferred by the silence or inaction of one party who knows of the boundary line claimed by the other and fails to dispute it for a ten-year period. *Tewes*, 522 N.W.2d at 806. Acquiescence is said to be "consent inferred from silence—a tacit encouragement[— and] involves notice or knowledge of the claim of the other party." *Patrick v. Cheney*, 226 Iowa 853, 856, 285 N.W. 184, 186 (1939).

■ Evidence at trial showed that the present contestants, as well as their predecessors in interest, treated the fence line as the boundary. Both the Eglis and their predecessors believed the fence was the boundary and had been the boundary since about 1945. Elmer Greve's own son testified that the fence was the "divider" between the farms.

Several witnesses testified that parties on both sides of the fence had, for many years, used the land up to the fence and no further. In addition, the owners on both sides of the fence have treated it as a boundary fence by entering into a fence maintenance agreement, and the maintenance of the fence in accordance with that agreement continued until approximately 1985.

We believe substantial evidence supports the trial court's finding.

## IV. *The Evidence Rulings.*

■ The defendants complain the court erroneously admitted hearsay evidence on the question of acquiescence. Specifically, they complain the plaintiffs were permitted to present testimony as to conversations with their seller and with a real estate agent prior to the purchase of the land. The defendants also objected to the written fence agreement admitted into evidence, complaining that it was hearsay. All of this evidence was inadmissible, according to the defendants, because it was offered to prove the truth of the matter asserted in it.

The plaintiffs respond in several ways. Part of the evidence came in before a hearsay objection was made and is therefore a part of the record in any event. Also, they claim if the evidence was hearsay at all it was subject to an exception under Iowa Rule of Evidence 803(3) (a statement of the declarant's then-existing state of mind, emotion, intent, design, etc.). The plaintiffs also argue a lack of prejudice, claiming that any hearsay statements by the plaintiffs' witnesses were merely cumulative because the defendants' own witnesses testified to similar statements about the fence.

We believe the court properly admitted the evidence under rule 803(3) with respect to the intent of the parties and their predecessors regarding the location of the boundary. In addition, we believe the evidence was admissible under Iowa Rule of Evidence 803(20), which provides this exception for reputation concerning boundaries:

Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in a community, and reputation as to events of general history important to the community. . . .

 In this case, we believe the "community" means the neighborhood and those persons who had knowledge predating the litigation concerning the boundary line.

One authority has said with respect to this exception:

This is a minor exception to the hearsay rule. Boundaries and easements are usually proven by reference to deeds and other documentary evidence.

Reputation evidence is multiple hearsay. It is glorified gossip and is not extraordinarily trustworthy. . . . However, in controversies concerning boundaries or customary usage of land in a community, it is sometimes the only evidence available. On the premise that some evidence, though multiple hearsay, is better than no evidence at all, this exception to the hearsay rule can be justified.

David F. Binder, *Hearsay Handbook* § 21.03, at 358 (3d ed.1991). This comment, we believe, demonstrates the practical necessity for such evidence in a case such as this. Evidence in the form of statements by neighbors and the real estate agent, as well as the fence maintenance arrangement under which the then-owners acknowledged the fence as a boundary provides sufficient trustworthiness to justify the application of this exception. Furthermore, we agree with the plaintiffs that any such evidence was merely cumulative because the defendants' own evidence presented basically the same facts. We find no error in the court's evidence ruling.

We affirm the district court on its finding of acquiescence discussed in Division III. We reverse the summary judgment discussed in Division I and remand to the district court for further proceedings.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

Lines show general location of Highway 52 only and are not part of survey

25A