**IN THE COURT OF APPEALS OF IOWA**

No. 13-1157
Filed May 29, 2014

**ROBERT R. EDDY and JUDITH E. EDDY,**
      Plaintiffs-Appellants,

**vs.**

**DANIEL G. PERRINE and JACKIE D. BLANCHARD,**
      Defendants-Appellees.
_____

      Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.



      Robert and Judith Eddy appeal from the district court's decision denying

their request to quiet title and granting a boundary by acquiescence to Daniel

Perrine and Jackie Blanchard.  **AFFIRMED.**



      Thomas P. Lenihan, West Des Moines, for appellants.

      Frank Murray Smith of Frank Smith Law Office, Des Moines, for appellees.



      Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

Robert and Judith Eddy (the Eddys) appeal from the district court's decision denying their request to quiet title and granting a boundary by acquiescence to Daniel Perrine and Jackie Blanchard. The Eddys argue the court should have quieted title in accordance with the platted boundaries and should not have modified the property boundaries under the doctrine of boundary by acquiescence. We affirm.

**I.      Facts and proceedings.**

The parties are neighbors with adjoining tracts of land in the Hunter's Run development. Perrine and Blanchard own the improved tract known as lot three; the Eddys own lot four. The lots were first platted in 1989. The home on lot three was first purchased in 1991; lot four remained unimproved. When the home on lot three was constructed, the builder also sodded and landscaped the lot. The sodding and landscaping of lot three included a semicircular outcrop of land platted to lot four, but which was separated from lot four by a small, wooded area.[1] The landscaping of this area later included the installation of a decorative edging around the half-moon boundary. Lot three was sold to Perrine and Blanchard in 1999.

Lot four was developed at some time between 1991 and 1993, when it was first occupied. It was sold again in 1997, and ultimately sold to the Eddys in 2004. The previous occupants of lots three and four believed the semicircular

---

[1] A wood and wire fence area for pets was also constructed beyond the platted lot area; however, the area enclosed by the fence is not at issue on appeal.

area was part of lot three.[2]  Until 2009, the parties maintained the property in the same way as their predecessors—Perrine and Blanchard maintained the semicircular area.  The parties did not discuss the lot boundary.  In November 2009, the Eddys had their lot surveyed.  The survey showed the semicircular area was actually part of lot four.  The Eddys installed a chain-link fence just inside the surveyed lot boundary, running through the semicircular area.  The Eddys have maintained the semicircular property since the 2009 survey and the placement of the fence.

The Eddys filed a petition on October 7, 2011, to quiet title and re-establish the original boundaries.  Perrine and Blanchard counterclaimed, requesting the court apply the doctrine of boundary by acquiescence to, among other things, declare the semicircular area as part of their property.  The district court held that Perrine and Blanchard were entitled to the semicircular area due to the establishment of a boundary by acquiescence.  The Eddys appeal.

## II.    Analysis.

Because the proceeding was brought to quiet title and was held in equity, we review de novo, though an action under Iowa Code chapter 650 (2011) to establish a boundary by acquiescence is normally considered on appeal as an ordinary action.  *Sille v. Shaffer*, 297 N.W.2d 379, 380 (Iowa 1980).

The doctrine of boundary by acquiescence is set forth in our statute: "If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such

---

[2] The immediately prior owners of lot three and four testified at trial that they discussed the edge of the semicircular area constituted the division between the two properties.

recognized boundaries and corners shall be permanently established."  Iowa Code § 650.14.

> The meaning of "acquiescence" under section 650.14 is well settled.  It is the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them.  Acquiescence exists when both parties acknowledge and treat the line as the boundary.  When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed.

*Sille*, 297 N.W.2d at 381.

For more than ten years prior to the 2009 survey, the parties and their predecessors in the land treated the semicircular area as part of lot three.  This treatment was in accordance to the tree-line and landscaping division of the area.  The predecessors acknowledged and treated the boundary as the official boundary, as did the Eddys, Perrine, and Blanchard.  The Eddys argue that Perrine and Blanchard did not establish the semicircular space as a boundary, but instead as land on the Eddys' property.  The record belies this assertion.  The parties' predecessors in the land testified they understood the semicircular landscaped edge as the property boundary.  The parties' behavior shows the treatment of the area as a boundary.

Next, the Eddys argue they did not mutually consent to the semicircular edge as a boundary line.

> Acquiescence may be inferred by the silence or inaction of one party who knows of the boundary line claimed by the other and fails to dispute it for a ten-year period.  Acquiescence is said to be "consent inferred from silence—a tacit encouragement[—and] involves notice or knowledge of the claim of the other party."

*Egli v. Troy*, 602 N.W.2d 329, 333 (Iowa 1999) (quoting *Patrick v. Cheney*, 285 N.W. 184, 186 (Iowa 1939)) (alteration in original; internal citation omitted). Both parties and their predecessors acted in accordance with the semicircular area belonging to lot three. The Eddys were aware of Perrine and Blanchard's use of the space as their own. By their actions, the Eddys consented to the claiming of the semicircular area as part of lot three.

Finally, the Eddys argue the line was not known, definite, or certain. They argue the landscape edging, installed and still present from over twenty years ago, cannot meet these requirements. We find the landscape edging sufficiently establishes the requirement that the edge be "definitely marked by fence or in some manner." *See Sille*, 297 N.W.2d at 381. We therefore affirm the district court. Costs on appeal are assessed to the Eddys.

**AFFIRMED.**