# IN THE COURT OF APPEALS OF IOWA

No. 19-0190
Filed October 23, 2019

DAN BREWER and LINDA BREWER,
    Plaintiffs-Appellees,

vs.

SCOTT PLAGMAN and RANDY DEARDORFF, as Trustee of the Randy G.
Deardorff 2009 Revocable Trust, dated July 2, 2009,
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Dallas County, Bradley McCall,

Judge.


The defendants appeal the district court order granting the plaintiffs a

boundary by acquiescence. **AFFIRMED.**


Jeffrey N. Bump of Bump & Bump, LLP, Panora, for appellants.

Matt O'Hollearn of Brick Gentry, P.C., West Des Moines, for appellees.


Considered by Bower, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, Judge.**

In this appeal of a boundary dispute between neighboring landowners, we must determine whether the district court erred in finding the plaintiffs established a boundary by acquiescence. Because any error in admitting hearsay evidence was not prejudicial and substantial evidence supports finding a boundary by acquiescence, we affirm.

**I. Background Facts and Proceedings.**

Between 1873 and 1911, John Royer acquired three adjoining farms in Dallas County. Over the next century, the farms passed down to Royer's descendants. Dan Brewer—Royer's great grandson—inherited one farm in 1992, and he and his wife, Linda, acquired the deed to a second farm in 2005. Their property consists of the northernmost and southernmost farms that Royer originally bought.

The remaining Royer farm lies between the parcels owned by the Brewers, with the Brewers' property bordering it on the north, east, and south. It remained in the Royer family until 2000, when Merlin Royer's estate sold it to Randy Deardorff. In 2016, Deardorff sold the southern portion of his parcel to Scott Plagman.

The subject of this litigation is the boundary running north and south on the eastern side of Deardorff's and Plagman's properties and the western side of the Brewers' property. A fenced corridor the parties call a "jungle lane" also runs north and south at the point where the parties' properties meet. At the north end of the jungle lane is a triangle-shaped area the parties call "the neck," which connects the north pasture to the south pasture.



*Exhibit D shows the location of the jungle lane and neck in white. The Brewers' property sits to its right. Deardorff's property is on the top half to its left, and Plagman's property is on the bottom half to its left.*

The boundary dispute arose after Plagman obtained a survey of the land in 2016. Although the Brewers believed the jungle lane's western fence line marked the boundary between the farms, the survey revealed the boundary in the legal description does not match the fence's location. The surveyor determined the boundary was "in between" the fences.

The Brewers filed an action to quiet title, alleging a boundary by acquiescence along the western fence. Deardorff and Plagman counterclaimed,

alleging a boundary by acquiescence along the eastern fence. Following a trial, the district court found the Brewers established a boundary by acquiescence along the western fence line.

**II. Hearsay.**

We first address Deardorff's and Plagman's claim that the district court permitted inadmissible hearsay at trial. Over their objection, Dan Brewer testified about an oral land agreement his father and Merlin Royer made in 1977 or 1978. According to Dan Brewer, Merlin Royer wanted to install a pond on his property but could not do so without some of the pond entering the pasture owned by Dan Brewer's father. He testified that his father and Merlin Royer entered into a "handshake deal to trade the land from the pond for the land of the neck."

Iowa Rule of Evidence 5.803(20) permits hearsay evidence on "[a] reputation in a community—arising before the controversy—concerning boundaries of land in the community." The term "community" means "the neighborhood and those persons who had knowledge predating the litigation concerning the boundary line." *Egli v. Troy*, 602 N.W.2d 329, 334 (Iowa 1999). In *Egli*, our supreme court acknowledged that boundaries "are usually proven by reference to deeds and other documentary evidence" and that reputation evidence "is multiple hearsay" or "glorified gossip" that "is not extraordinarily trustworthy." *Id.* (quoting David F. Binder, *Hearsay Handbook* § 21.03, at 358 (3d ed.1991)). But the court found a "practical necessity" for reputation in cases involving boundaries or customary usage of land because it is often the only evidence available. *Id.* "Evidence in the form of statements by neighbors and the real estate agent, as well as the fence maintenance arrangement under which the then-

owners acknowledged the fence as a boundary provides sufficient trustworthiness to justify the application of this exception." *Id.*

The defendants argue Dan Brewer's testimony is unlike that in *Egli*, where "neighbors and the real estate agent" testified about the reputation. *Id.* They claim that Dan Brewer is a family member rather than a member of the community, citing *Joyce v. Barnes*, No. 2007-G-2809, 2008 WL 2173860 at *4 (Ohio Ct. App. May 23, 2008) (holding testimony of family members connected to the property at issue did not fall within the hearsay exception). In that case, however, the testimony of those family members was "controverted by four longtime neighbors to the properties concerned." *Joyce*, 2008 WL 2173860 at *4. That is not the case here.

Even if the evidence does not fall within the hearsay exception, the district court noted in overruling defendants' objection the testimony was "not essential to the conclusions reached by the court in his ruling." In other words, its admission was not prejudicial. *See See Hawkins v. Grinnell Regional Med. Ctr.*, 929 N.W.2d 261, 265 (Iowa 2019) (noting that we presume the admission of hearsay evidence is prejudicial unless the record shows otherwise). We find no reversible error.

### III. Substantial Evidence.

Even disregarding the evidence about the "handshake deal," we agree that substantial evidence supports the district court's finding that the Brewers established a boundary by acquiescence. *See Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997) (noting the district court's judgment has the effect of a jury verdict and we need only decide whether substantial evidence supports its findings). "Acquiescence exists when both parties acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes

the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed." *Id.* (citation omitted).

> Though the party seeking to establish a boundary other than a survey line must prove it by clear evidence, some overt act is not required in order to establish acquiescence. Moreover, the mere denial of knowledge of the existence of a fence or some other marker demarcating a boundary, or of a claim of ownership thereto will not defeat the claim of acquiescence to the boundary if the circumstances are such that the landowner should be required to take notice thereof.

*Albert v. Conger*, 886 N.W.2d 877, 880 (Iowa Ct. App. 2016) (cleaned up).

The evidence shows that the Royer family used the jungle lane and neck to move cattle between properties for more than a hundred years before Deardorff bought his land. Ruth Brewer, Dan Brewer's ninety-seven-year-old mother, testified that the purpose of the jungle lane was to move cattle between the northernmost farm's pasture and the barn located on the southernmost farm. She testified that the lane has been in use throughout her lifetime and estimated it dates to 1886. The Brewers and their son testified in kind, and physical evidence of various fences used along the jungle lane over the years supports their testimony. The evidence even shows that Deardorff acquiesced in Brewers' use of the jungle lane and neck during the sixteen years he owned it before selling part of his land to Plagman. For these reasons, we affirm.

**AFFIRMED.**