**IN THE COURT OF APPEALS OF IOWA**

No. 22-2006
Filed August 30, 2023

**BERNARD A. NELSON, VICKI TOOMSEN, RODNEY NELSON, RICKY NELSON, and SHERRI BROWN,**
    Plaintiffs-Appellees,

**vs.**

**BOBETTE CROSS and GIDGET CROSS TRASK,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Humboldt County, Kurt L. Wilke, Judge.

Defendants appeal the boundary determination in favor of the plaintiffs. **REVERSED AND REMANDED.**

Brian L. Yung of Johnson, Mulholland, Cochrane, Cochrane, Yung & Engler, PLC, Fort Dodge, for appellants.

George A. Cady III of Cady & Rosenberg Law Firm, PLC, Hampton, for appellees.

Considered by Chicchelly, P.J., Buller, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BLANE, Senior Judge.**

In this boundary dispute, property owners Bobette Cross and Gidget Cross Trask[1] appeal the district court order finding adjoining property owners Bernard A. Nelson, Vicki Toomsen, Rodney Nelson, Ricky Nelson, and Sherri Brown were entitled to a boundary establishing their possession of a disputed 8.5-foot strip of land between the properties.[2] Finding the trial court misapplied the law as to acquiescence and adverse possession, and the Nelsons failed in their proof as to declaratory judgment, we reverse.

## I.       Factual background and proceedings.

The sliver of land in dispute is in Renwick, Iowa. In 1999, the Nelsons first acquired a home on a parcel with 130 feet of frontage on the west side of Smith Street. In 2002, the Nelsons purchased 46 feet to the south so they could build a garage. In 2010, they purchased an additional 20 feet to the north of their property. Their frontage on Smith Street then consisted of 196 feet. In 2013, the Nelsons purchased a 100-foot lot to the north of their 196-foot lot, which contained a house. On May 12, 2014 the Nelsons sold the 100-foot lot and house to the Crosses, legally described in the warranty deed as:

> A parcel of land in the Northeast Quarter of the Northwest Quarter (NE ¼ NW ¼) in Section Thirty-six (36), Township Ninety-three (93), Range Twenty-seven (27), West of the 5th P.M., Humboldt County, Iowa, described as follows: Commencing at a

---

[1] Bobette owns a life estate in the real estate and Gidget has the remainder interest.

[2] Bernard and Anne Nelson purchased and sold all of the real estate as husband and wife. On May 12, 2014, Bernard and Anne conveyed a remainder interest in their property to their children Vicki Toomsen, Rodney Nelson, Ricky Nelson, and Sherri Brown and retained a life estate. Anne Nelson died in 2018. For simplicity we refer to them collectively as the Nelsons. And, except as otherwise noted, we refer to Bobette and Gidget as the Crosses.

point 296 feet North of the Southeast corner of the Northeast Quarter of the Northwest Quarter, thence running West 165 feet, thence South 100 feet, thence East 165 feet, thence North 100 feet to place of beginning. Subject to easements and restrictions of record.[3]

The Nelsons and the Crosses got along as neighbors for a period. No fence, trees, hedge row, or any other markings visibly delineated the property line.

In 2020, Bernard became irritated with Bobette's dog coming onto his property. To resolve the problem, Bobette decided to fence her yard and hired a professional land surveyor (PLS), David L. Wilberding, to survey her lot. Wilberding located the lot lines and installed pins. Bobette marked her south lot line pin with a visible stake. Bernard disputed the lot line, and the Nelsons filed their petition in equity alleging a boundary had been established by acquiescence for more than ten years and seeking an order establishing the boundary 8.5 feet north of the surveyed boundary. The Nelsons later amended their petition to also allege a claim of adverse possession and for declaratory judgment, seeking the same remedy.

At trial, the Nelsons called Susan Reed, an employee of the North Central Title Company of Humboldt. Her work includes preparing new and continuing existing abstracts, and performing lien searches. She identified the deeds filed regarding the Nelsons' purchases of the various properties as well as the original city of Renwick plat map from 1882, and a survey filed in 1992. All of the Nelsons' deeds as well as the Crosses' deed contain legal descriptions that have their point of beginning as "the Southeast corner of the Northeast Quarter of the Northwest

---

[3] This is the identical legal description that is in the warranty deed that conveyed the lot to the Nelsons.

Quarter." Reed also reviewed the 2020 survey plat and "corner certificate" filed by Wilberding, the PLS who performed the 2020 survey and plat. The corner certificate states:

> MONUMENT DESCRIPTION AND REMARKS: SOUTHEAST CORNER NE ¼ - NW ¼. SEPT. 3, 1992 SURVEY CALLS FOR A NAIL AT THIS CORNER. FOUND A 1" PK NAIL WITH RED RIBBON 3" DEEP IN ACC ROAD. REMOVED NAIL AND REPLACED WITH A 5/8" X 30" BLUE CAPPED REROD FLUSH WITH ROAD SURFACE. CORNER MEASURES 1313.15 SOUTH FROM THE N ¼ CORNER WHICH MATCHES SEPT. 3, 1992 SURVEY.

Reed testified that quarter sections are usually 1320 feet square. Reed was of the opinion that the 1992 survey misplaced the corner pin 8.5 feet further south than as shown on the 1882 plat and so did the 2002 survey. Reed believed the 1992, 2002, and 2020 surveys did not start from a correct point of beginning. Reed did not personally view the area in dispute, nor observe where the pins are located, nor locate the southeast corner of the section, other than on the plat maps.

Bernard testified that after he acquired the forty-six-foot parcel in 2002 he had it surveyed to identify the south lot line since he was going to build a garage.[4] The 2002 survey shows the south lot line of the forty-six-foot parcel (Tract 2) is 187 feet north of the north edge of McCurry Street and is the boundary line between Tracts 1 and 2. He personally observed the four corner pins for this lot. Exhibit 3 is a photo that shows a black pole that Bernard identified as the southwest corner of the forty-six-foot lot (the southwest corner of his properties), which is identified on the 1992 survey plat.

[4] This is also referred to as the Sidwell survey.

Bernard relied on the 1992 survey to establish his southern boundary when he built his garage. He agrees that his north lot line is 196 feet north from the pin that marks the south lot line of his property, which is the south lot line of his forty-six-foot lot. After the sale to the Crosses, Bernard did not put in any stakes or pins to show his lot line on the north. There were no survey corner pins for the twenty-foot lot. Bernard claims that he mowed the 8.5-foot area and the Crosses mowed up to that line on her side.

Bobette testified that when she purchased the property from the Nelsons in 2014, she did not know the specific location of her southern lot line and there were no markers. She never discussed or agreed with Bernard where the lot line was located. Bernard never identified or claimed the 8.5-foot area as his. The area south of her house was mowed by both of them as there was no designation or agreement on where the property line was located. Pursuant to the 2020 survey and the pin placed for her north lot line, her propane tank is on her lot and the neighbor to the north has his propane tank on his lot. If the lot line is moved south 8.5 feet as claimed by the Nelsons, then Bobette's propane tank would be on the north neighbor's lot.

Following the bench trial, on November 18, 2022, the district court found for the Nelsons as follows.

> Here, Mr. Nelson purchased the land containing the disputed 8.5 strip of land in 2010. Mr. Nelson testified that he solely maintained that property including the 8.5 foot strip until the 2020 survey when Ms. Cross began mowing over the same strip. This court finds that Mr. Nelson should prevail in both arguments of acquiescence and adverse possession. In addition, this court further finds that Mr. Nelson had a right to rely on the Renwick city plat as well as the 1992 survey in determining what portion of land he was purchasing. So too did Ms. Cross. Ms. Cross purchased 100 feet of

frontage and there has been no significant evidence that she has received less.

It Is Ordered that the boundary line between the parties' properties shall be established along a line 8.5 feet north of the 2020 surveyed boundary line. Court costs assessed to Defendants.

The Crosses appeal.

## II.    Standard of review.

We must first determine the appropriate standard of review. The Crosses in their appeal brief acknowledge our review of an adverse-possession claim on appeal is de novo. *Sille v. Shaffer,* 297 N.W.2d 379, 380 (Iowa 1980) (stating "[a]dverse possession is established by a quiet title action, an equitable proceeding under [Iowa Code] chapter 649"; our review of an adverse-possession claim on appeal is de novo) As to acquiescence, the Crosses identify it "is a special action" citing *Ollinger v. Bennett,* 562 N.W.2d 167, 170 (Iowa 1997) and Iowa Code § 650.4, and that the standard of review is for correction of errors at law. *See* Iowa Code § 650.15. But the Crosses conclude by "request[ing] the appeal be reviewed de novo because the case was tried as an equitable action" citing *Albert v. Conger*, 886 N.W.2d 877, 879–80 (Iowa Ct. App. 2016). As to the standard of review, the Nelsons in their brief simply posit: "This is an equitable proceeding and with a *de novo* standard of review."

In *Albert*, a panel of our court applied a de novo standard of review to the appeal involving claims of adverse possession and acquiescence, stating:

> In any event, we will review the district court's disposition of this claim de novo for two reasons: (1) the parties appear to be in agreement that the claims were equitable and tried in equity and (2) our ultimate resolution of this issue is the same under a de novo review as it would be if we were reviewing for correction of errors of law. *See City of Davenport v. Shewry Corp.*, 674 N.W.2d 79, 82 (Iowa 2004) (choosing to review that case de novo for these reasons).

886 N.W.2d at 879–80. Although technically not the correct standard for reviewing the acquiescence claim, for the same reasons as set forth in *Albert*, we will apply de novo review. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g).

### III. Discussion.

### A. Acquiescence and adverse possession.

Iowa Code section 650.14 (2022) provides: "If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established." A boundary line between two properties can be established by acquiescence if the party seeking to establish the boundary proves by clear evidence there is a "mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them." *Egli v. Troy*, 602 N.W.2d 329, 333 (Iowa 1999) (citation omitted). "Acquiescence exists when both parties acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed." *Id.* (citation omitted).

The doctrine of adverse possession is based on the ten-year statute of limitations for recovery of real property in Iowa Code section 614.1(5). *See*

*Carpenter v. Ruperto*, 315 N.W.2d 782, 784 (Iowa 1982). "A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *C.H. Moore Tr. Est. v. City of Storm Lake*, 423 N.W.2d 13, 15 (Iowa 1988). The doctrine of adverse possession is strictly construed because the law presumes possession is under regular title. *Mitchell v. Daniels*, 509 N.W.2d 497, 499 (Iowa Ct. App. 1993). The burden is on the plaintiff to show all the elements of adverse possession by clear and positive proof. *Carpenter*, 315 N.W.2d at 784.

The district court found the Nelsons entitled to prevail based on both acquiescence and adverse possession. The court found that the Nelsons had purchased the twenty-foot parcel in 2010 and maintained it until 2020 when the Crosses obtained the survey and disputed it. The evidence does not support this. Bernard and Anne bought the 100-foot property to their north in 2013. Bobette and Gidget bought it from them in 2014. Bobette had the property surveyed in 2020 and thereafter considered the disputed 8.5 feet as part of her lot. There is no evidence that predecessor owners from whom the Nelsons purchased ever agreed to a lot line now claimed by the Nelsons. Bernard testified about where he mowed since selling to the Crosses in 2014, but did not testify about mowing it before 2014. *See Huebner v. Kuberski*, 387 N.W.2d 144, 147 (Iowa Ct. App. 1986) (finding that mowing in a disputed area did not establish adverse possession.)

The Nelsons signed a warranty deed containing a legal description that, if the survey is correct, conveyed the disputed 8.5 feet to the Crosses. The lot line is not delineated by a fence, trees, or hedge row. Bernard testified there were no pins, stakes, or other markers identifying the boundary between the properties.

There is no basis to find that the Crosses acquiesced in a boundary as claimed by the Nelsons. The law also requires adverse possession for a ten-year period. That length of time simply has not existed between these parties as owners or previously. The Nelsons failed to prove by clear and positive proof entitlement to the disputed sliver of land.

**B. Declaratory Judgment.**

We then must turn to the Nelsons' claim for a declaratory judgment raised in their amended petition. The district court found: "In addition, this court further finds that Mr. Nelson had a right to rely on the Renwick city plat as well as the 1992 survey in determining what portion of land he was purchasing. So too did Ms. Cross." The Nelsons argue

> [t]he dispute between the parties arises out of a 2020 survey obtained for Cross that had a different starting point than the previous surveys. The point of beginning of the Cross survey started at approximately 8.5 feet out into the middle of McCurry Street rather than at the corner of the lot abutting McCurry Street.[5]

This argument is based on comparing the 1882 Renwick city plat and the 1992 survey with the 2020 survey and the corner certificate. The general rule is that "lines of a senior plat survey will prevail over conflicting lines in a junior survey." *Pearson v. City of Guttenberg*, 245 N.W.2d 519, 527 (Iowa 1976). The critical question is whether the 2020 survey correctly identified the point of beginning from which to conduct the measurements. The section platted in 1882 for the city of Renwick is for the quarter section south of the section that contains the Nelson

---

[5] We observe that the reference to "8.5 feet out into the middle of McCurry Street" is not supported by the evidence. Exhibit 11, the 1992 survey shows the reference to 8.5 is the corner pin in Smith Street.

and Cross properties. A review of the 1882 plat shows McCurry Street, the last east-west street platted on the north edge of Renwick. Smith Street had not yet been created and is not platted. The 1882 plat does not specify the number of feet in the section north of McCurry Street where the properties in question are located. The north boundary of the platted section is shown to be 187 feet north of McCurry Street, which would be the south boundary of the section in question.

The 1992 survey platted Tracts 1 and 2. Tract 2 is the forty-six-foot lot later purchased by the Nelsons in 2002. It shows "N.E. COR S.E. ¼ N.W. ¼ NAIL" at a point in the street east of the north-south lot line with "8.5" shown on the survey plat. The 1992 plat also states the distance from the northeast corner pin is 1313.15 feet from the "N. ¼ COR. SEC. 36 I PIN." The lots along Smith Street later purchased by the Nelsons and the Crosses are not specifically shown on the 1992 plat. The point of beginning (stated on the plat as "POB") is at the southeast corner of Tract 2, which is eventually the south boundary line of the Nelsons' 196-feet of frontage.

The 2002 survey requested by the Nelsons as to their forty-six-foot tract, shows Smith Street that runs north-south. Tract 1, with 187 feet of frontage on Smith Street, is directly north of McCurry Street.[6] To the north is the forty-six-foot lot (Tract 2) the Nelsons purchased in 2002.[7] To the north is the 130-foot lot and house the Nelsons purchased in 1999. Next to the north is the twenty-foot lot the Nelsons purchased in 2010. Finally, to the north, is the 100-foot lot (and house) the Nelsons purchased in 2013 and sold to the Crosses in 2014.

---

[6] The plat shows the number 187, as well as 185.7.
[7] The plat shows the number 46, as well as 45.7.

From the 2020 Cross survey, the filed plat shows the surveyor located the "government section" designated by the nail with a red ribbon consistent with the 1992 survey. This is represented by a triangle symbol.[8] This is consistent with the location of the point of beginning for the 1992 survey. Having determined the point of beginning, that being the southeast corner of the section, surveyor Wilberding measured 296 feet north, the frontage of the Nelson's property, and then marked the south lot line of the Cross lot. From there he measured north 100 feet on the east line, west 165 feet, south on the west line 100 feet and then east to the starting point 165 feet, installing his corner pins.

In deciding the declaratory judgment in favor of the Nelsons, the district court indicated that the Nelsons and the Crosses had "a right to rely on the Renwick city plat *as well as the 1992 survey* in determining what portion of land he was purchasing." Yet, Reed testified that it was the 1992 survey that misidentified the southeast corner and incorrectly placed the pin. She based her opinion on the assumption that the section should have 1320 feet of boundary. She also acknowledged that there are exceptions to this distance.

From our review, we cannot credit Reed's opinion that the survey pin installed by the surveyor in 1992 and located by Wilberding in performing the 2020 survey had shifted or moved. We also find that Reed's opinion as an abstractor, and one who has not viewed the properties, is not more credible than the surveyor.

---

[8] The plat, as in the corner certificate, indicates surveyor Wilberding replaced the nail with a blue capped thirty-inch rerod driven into the street. The 2020 survey plat also shows the distance of this pin is 1313.15 feet from the north section pin, the same distance as shown on the 1992 survey plat. This measurement indicates that the location of the pin had not moved.

The Nelsons did not establish clear and positive proof of the lot line and ownership of the disputed land. The lot line established by the 2020 survey is the most clear and positive evidence of its location. For this reason, we reverse the judgment of the district court and remand for entry of a decree consistent with this opinion.

**REVERSED AND REMANDED.**