**Brent E. TEWES, Appellant,**

v.

**PINE LANE FARMS, INC., Appellee.**

**No. 92–1989.**

Supreme Court of Iowa.

Oct. 19, 1994.

Dennis Cmelik, Hartley, for appellant.

Robert W. Sackett of Sackett & Sackett, Spencer, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

This appeal arises out of a boundary line dispute between two landowners of adjoining north and south 80–acre tracts. The trial court found and concluded that defendant Pine Lane Farms, Inc. proved by the theories of acquiescence and adverse possession its entitlement to a boundary line approximately forty-six feet north of the boundary line established by a recent survey. We agree that defendant has proved its claimed boundary line by the theory of acquiescence. Accordingly, we affirm the judgment of the trial court.

I. *Background facts and proceedings.* Brent E. Tewes (Tewes) is the owner of the

North Half of the Northeast Quarter of Section Fourteen in Township Ninety–Eight North of Range Thirty–Nine West of the Fifth P.M. in Osceola County, Iowa (North 80). Tewes took possession of the North 80 in March 1991, purchasing the land from Linda Kaufman and Robert Pashby.

Pine Lane Farms, Inc. (Pine Lane) owns the South Half of the Northeast Quarter of Section Fourteen (South 80). The principal shareholders of Pine Lane, Vernon B. Dykstra (Dykstra) and Patricia A. Dykstra, conveyed the South 80 to Pine Lane sometime around February 3, 1977. The Dykstras had purchased the South 80 on February 7, 1966 from Vernon and Leila Donnenwerth.

At least as long as the Dykstras or Pine Lane has owned the South 80, no fence has separated the South 80 from the North 80. Aware of the lack of a southern boundary on the North 80, Tewes requested as part of his offer to purchase the North 80 from Kaufman and Pashby that a survey be completed. Upon Kaufman and Pashby's acceptance of Tewes' offer, Lloyd W. Scherlin, a professional engineer and land surveyor, performed a survey. Scherlin completed the survey on February 9, 1991 and placed appropriate markers to show his determination of the southern boundary on the North 80.

Upon observing the survey markers, Dykstra removed them and informed Tewes that he would not agree to a change in the boundary line between the two properties, Dykstra believing that the appropriate boundary line is the boundary line represented by three posts, one near the fence bordering the properties on the east, one near the fence bordering the properties on the west, and one situated between the middle of these two bordering posts. Although the two bordering posts have been in place at least since the Dykstras purchased the South 80 in 1966, apparently the middle post has been replaced at least once by Dykstra. The boundary line represented by these three posts is approximately forty-six feet north of the boundary line depicted by the Scherlin survey, making the disputed area of land consist of approximately two and one-half acres.

The history of the chains of titles of the two 80s is not in dispute. Until the middle

or latter 1950s, both 80–acre tracts were owned by a common owner. Since the acreage has been split into two separate parcels and until 1991, the North 80 has been owned by members of Kaufman and Pashby's family. Ralph Magee, Kaufman and Pashby's grandfather, acquired the North 80 at the time when the two 80s were first sold separately, approximately in 1959. Thereafter, in 1961, Minnie Magee, Ralph Magee's wife and Kaufman and Pashby's grandmother, inherited the property from Ralph Magee. Title to the North 80 subsequently descended through Minnie Magee to her daughter, Mildred Pashby, and, as a result of Mildred Pashby's death in 1985, the property thereafter descended to Mildred Pashby's children, Linda Kaufman and Robert Pashby. As mentioned, Kaufman and Pashby then sold the North 80 to Tewes who took possession in March 1991.

The history of the chain of title of the South 80 is somewhat more abbreviated. Around the time that the South 80 and North 80 were separated, Vernon Donnenwerth and Leila Donnenwerth became the owners of the South 80. As mentioned previously, the Dykstras, who subsequently conveyed the land to Pine Lane sometime around February 3, 1977, purchased the land from the Donnenwerths on February 7, 1966.

The history of the owners' beliefs regarding the boundary separating the North and South 80s is not as clear as the history of the chains of titles. Apparently, the first dispute regarding the boundary separating the two 80–acre tracts arose between Vernon Donnenwerth and Ralph Magee shortly after Ralph Magee purchased the North 80 around 1959, and allegedly Ralph Magee had a survey performed at that time. Kaufman testified at trial that her grandfather requested the survey because the southern boundary of the North 80 was not marked by a fence.

The next controversy on record occurred sometime around 1975 when Robert Charles Pashby, then Mildred Pashby's husband, had the property surveyed on behalf of the owner of the North 80, his mother-in-law Minnie Magee. Kaufman testified at trial that the 1975 survey resulted from some controversy

between Dykstra and Kenneth Mohr, a tenant farmer renting the North 80 at that time and continuously until 1991, regarding the southern boundary line of the North 80.

In accordance with the 1975 survey, wood lathe stakes were placed in the land around the same location that Scherlin had placed the stakes in accordance with his 1991 survey. When Dykstra noticed the stakes in the field after the 1975 survey, he visited Tom Hamilton, an attorney who was representing the Magee family at that time. Apparently, Hamilton told Dykstra that the boundary line should not be in accordance with the recent survey but should remain in accordance with the three posts, which Dykstra believed to be the correct boundary line.

Thereafter, no further controversies occurred between the owners of the North 80 and the owners of the South 80 regarding the boundary between the two 80–acre tracts of land until the current dispute. From 1975 until 1991, just as from 1966 to 1975, the Dykstras or Pine Lane's agent planted Pine Lane's crop north to the east-west line depicted by the three posts, and the owners of the North 80 or their tenant, Kenneth Mohr, planted their crop south to where the Pine Lane crops ended. In the spring of 1991, however, Pine Lane's agent planted Pine Lane's crop in the disputed area and then Tewes planted his crop over Pine Lane's crop.

On April 25, 1991, plaintiff Tewes filed the present action asking the court to enter an order decreeing the southern boundary between the North 80 and the South 80 to be in accordance with the Scherlin survey line that allegedly is on the government survey line between the two 80–acre tracts.

Pine Lane filed an answer asserting that the boundary line between the two tracts of land had been marked at least since February 1966 and had been accepted by the respective owners for more than the past twenty-five years. Pine Lane also alleged that such boundary line had been established by adverse possession.

After a bench trial, the district court rejected Tewes' request for an order establishing the Scherlin survey line as the boundary line between the two properties and ordered the boundary line established as the east to west running line shown by the three recently painted white posts. The district court concluded that Pine Lane gave Tewes fair notice of its boundary line claim by virtue of paragraphs 3, 4, and 5 in Pine Lane's answer, Pine Lane had established by clear proof each of the elements of both acquiescence and adverse possession, and thereby Pine Lane had . established entitlement to its claimed boundary line.

Plaintiff Tewes appealed.

■■■ This is a special action tried at law under Iowa Code Chapter 650 (1991). We hear this appeal "as in an action by ordinary proceedings." Iowa Code § 650.15. Accordingly, our review is on errors assigned as in an action at law. *Davis v. Hansen*, 224 N.W.2d 4, 5 (Iowa 1974). "Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict." *Id.* If supported by substantial evidence, the judgment will not be disturbed on appeal. Iowa R.App.P. 14(f)(1); *Hansen*, 224 N.W.2d at 5.

II. *Preservation of error on defendant's acquiescence claim.* Plaintiff Tewes first contends that defendant Pine Lane did not properly plead defendant's claim that the location of the boundary line had been established by the theory of acquiescence. The trial court believed defendant's pleading of this claim in its answer was fair notice to plaintiff. We agree with the trial court.

■■■ Iowa Code section 650.6 states that in a boundary dispute case either the plaintiff or the defendant may put in issue the fact that a certain alleged boundary has been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years. In its answer, defendant alleged the existence of such a common, accepted marked boundary since 1966.

Although it may have been better pleading form for defendant to have raised its contention by a counterclaim, the filed pleadings appropriately framed, and gave notice to the parties and the court, the issues to be tried under chapter 650 of the Code.

III. *Aerial photographs.* Plaintiff Tewes next contends that the trial court erred in not admitting into evidence plaintiff's exhibits 5 and 6A–6M, which are a certification by a United States Department of Agriculture county executive director for the Agricultural Stabilization and Conservation Service (ASCS), James W. Bergman, and several aerial photographs of the two 80–acre tracts dated from 1979 to 1991. The trial court sustained defendant's objections to the exhibits due to lack of proper foundation for admission in evidence. We agree with the trial court's ruling resulting in the exclusion of these exhibits.

At trial plaintiff simply offered in evidence the ASCS county executive director's certification and the photographs as business records without laying further foundation. Plaintiff had subpoenaed two employees of the county ASCS office, including the certifier Bergman, but they refused to testify about the proffered photographs because of lack of permission from their superiors. *See* Appearance of USDA Employees as Witnesses in Judicial or Administrative Proceedings, 55 Fed.Reg. 42,347, 42,348 (1990) (codified at 7 C.F.R. § 1.214).

On the back of each photograph was hand written, apparently by the certifier Bergman, the alleged distance from a road to the crop line between the North 80 and the South 80. Plaintiff contends that the crop line, and thus the defendant's alleged boundary line, varied from year to year, as shown by the varying figures noted on the back of each photograph.

Defendant objected on the basis of (1) there was no evidence that the marked photographs were an accurate representation of facts personally observed by a witness, (2) there was no evidence regarding the height and angle from which the aerial photographs were taken and thus the photographs were unreliable, (3) there was no evidence that the markings on the back of the photographs were made in the regular course of business rather than prepared for the purposes of trial, and (4) the exhibits lacked trustworthiness.

■ "The general rule in regard to photographs is that their admission or exclusion rests largely in the discretion of the trial court since it has the opportunity to examine the photographs and hear the evidence." *Twyford v. Weber,* 220 N.W.2d 919, 924 (Iowa 1974). "A ruling on the admissibility of photographs will not be interfered with upon appeal except upon a clear showing of abuse of discretion." *Id.* Whether photographs should be excluded is "largely, if not entirely," a question left to the discretion of the trial court. *Id.* at 925.

Iowa Code section 622.28 provides in pertinent part:

> Any writing or record, whether in the form of an entry in a book, or otherwise, including electronic means and interpretations thereof, *offered as memoranda or records of acts, conditions or events to prove the facts stated therein,* shall be admissible as evidence *if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness,* and if the judge finds that they are not excludable as evidence because of any rule of admissibility of evidence other than the hearsay rule.

(Emphasis added.)

■ Impliedly referring to this section of the Code concerning admissibility of business records, the trial court found that the measurement information written on the back of the photographs was not the type of measurement information regularly kept in the office of record, the ASCS office. Rather, the trial court found that the measurement information on the back of the photographs was computed and written by the certifier for the purposes of litigation. Similarly, the trial court found that since the foundation was lacking that the original photographs or slides are likewise marked with the type of measurement information written on the back of the proffered photographs, the photographs and associated information lacked the legal trustworthiness necessary for admission, impliedly under section 622.28.

Since plaintiff failed to offer evidence regarding the regularity of measurement information written on the back of the photographs and regarding the existence of measurement information on the back of the original slides or photographs, the trial court's ruling that the photographs lacked the requisite trustworthiness was not an abuse of its discretion. Accordingly, the court correctly refused to admit under section 622.28 the aerial photographs, along with the certification, offered by the plaintiff for the purpose of proving the measurement information written on the back of each photograph.

We also conclude that other theories of admissibility now advanced by plaintiff either were not preserved before the trial court or have no merit. The court correctly sustained defendant's objections to the exhibits.

IV. *Theory of acquiescence.* Plaintiff Tewes further contends that the trial court erred in establishing a common boundary line as claimed by defendant based on the theory of acquiescence.

■ A. According to the theory of acquiescence set forth in the Iowa Code, a boundary line may be established by a showing that the two adjoining landowners or their predecessors in title have recognized and acquiesced in a boundary line for a period of ten years. Iowa Code §§ 650.6 & 650.14; *see Hansen,* 224 N.W.2d at 6. Each of the adjoining landowners or their grantors must have knowledge of and consented to the asserted property line as the boundary line. *Sille v. Shaffer,* 297 N.W.2d 379, 381 (Iowa 1980). "When [such] acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed." *Id.; Hansen,* 224 N.W.2d at 6.

■ Acquiescence need not be specifically proven; it may be inferred by the silence or inaction of one party who knows of the boundary line claimed by the other and fails to take steps to dispute it for a ten-year period. *Dart v. Thompson,* 261 Iowa 237, 241, 154 N.W.2d 82, 84–85 (1967). However, the party seeking to establish a boundary line other than the boundary line in accordance with a survey must prove acquiescence by clear evidence. *Brown v. McDaniel,* 261 Iowa 730, 733, 156 N.W.2d 349, 351 (1968).

B. We believe that the trial court's finding and conclusion that Pine Lane met the aforementioned requirements of acquiescence is supported by substantial evidence. As the trial court stated:

[T]he three posts in the field which Pine Lane contends constitute its north property line and having been in existence on or before 1966 and the crop residue line left each year in the near vicinity of the posts would constitute a definitely marked dividing line other than that shown by the survey.

Tewes argues that the boundary line established by Pine Lane is not definitely marked, and not known to or consented by Tewes and his predecessors in title. Substantial evidence, however, supports the trial court's findings and conclusions to the contrary.

■ 1. Although the boundary line claimed by Pine Lane is not marked by a fence or some other consistently solid barrier, the three posts represent a distinct division of the parties' properties. The line running between the posts is made more definite by each year's crop residue. Although the crop residue line varied somewhat from forming a straight line with the three posts each year, the trial court found that such variance occurred not because the landowners did not recognize the three posts as the boundary between the two properties but because "12–row planting equipment was used and with planting starting on the south end of the South 80, it was difficult to plant east-west and stop exactly on the post line." Thus, although the trial court found that for practical reasons the boundary line did not form a perfectly straight line each year, substantial evidence supports the trial court's conclusion that the three posts and the crop residue formed the basis of a sufficiently definite boundary line.

2. The trial court's finding that the North 80 landowners had knowledge of a boundary

line other than the survey boundary line is also supported by substantial evidence.

In the past ten years, the North 80 has had several different owners—Mildred Pashby (1981–1985), Linda Kaufman and Robert Pashby (1985–1991), and Tewes (1991–present). Kaufman's trial testimony that Robert Charles Pashby, her mother's husband, had a survey performed in 1975 to determine the southern boundary line of the North 80, as stated by the trial court, "appears to contradict her contention of lack of knowledge that the owners of the south were claiming a different boundary line." The fact that Robert Charles Pashby requested the 1975 survey also supports the inference that Mildred Pashby, his wife, had knowledge of the South 80 landowner's claim to a different boundary line. Finally, Tewes' knowledge of Pine Lane's assertion of a boundary line other than the boundary line established by the Scherlin survey is proved by Dykstra informing Tewes of the same just prior to Tewes taking possession of the North 80 in 1991.

Plaintiff contends that plaintiff's predecessors in title have denied the requisite knowledge of defendant's claim to the specific three-post line as the boundary line and that any North 80 tenant's knowledge of the three-post boundary line cannot be imputed to their landlord landowners. We agree with the plaintiff that a tenant's knowledge and consent to a claimed boundary line is insufficient in itself to bind the landowner to a boundary line by virtue of the theory of acquiescence. Our decisions and other authorities demonstrate that the landowner himself must satisfy the knowledge requirement. See McDaniel, 261 Iowa at 735, 156 N.W.2d at 352 (In holding that a boundary line had not been established by acquiescence, the court pointed out that the beneficial owners of the land must at least be aware of the claimed acquiesced in fence.); Griffin v. Brown, 167 Iowa 599, 612, 149 N.W. 833, 838 (1914) ("No one can be said to have acquiesced in a line until it is shown first that he had notice or knowledge of the claimed line." (Emphasis added.)); 12 Am. Jur.2d Boundaries § 85, at 621 (1964) ("But the line acquiesced in must be known, defi-

nite, and certain, or known and capable of ascertainment.").

However, we disagree with Tewes' contention that the tenant's knowledge of defendant's asserted boundary line "doesn't really matter." On the contrary, the North 80 tenant's knowledge, as established by the record, is evidence of plaintiff's predecessor owners' opportunity to know of Pine Lane's three-post boundary line claim.

This court has recognized that the opportunity to know is properly considered in determining knowledge of a fact. Loghry v. Capel, 257 Iowa 285, 291, 132 N.W.2d 417, 420 (1965). Further, this court has held that mere denial of knowledge of the existence of a fence or some other marker demarcating a boundary, or of a claim of ownership thereto will not defeat the claim of acquiescence to the boundary "if the circumstances are such that [the landowner] should be required to take notice thereof." Olson v. Clark, 252 Iowa 1133, 1138, 109 N.W.2d 441, 444 (1961); see also United States v. Wilcox, 258 F.Supp. 944, 946 (N.D.Iowa 1966) ("Sometimes there can be such opportunity to know that a person should be required to take notice."); In re Marriage of Halvorsen, 521 N.W.2d 725, 728 (Iowa 1994) ("Willful ignorance is not a good substitute for 'lack of knowledge of true facts on part of actor.'").

Plaintiff's predecessor owners' opportunity to know of Pine Lane's claim to the three-post boundary line here is just as great as the Olson defendants' opportunity to become aware of the claimed boundary line in Olson. One Olson defendant landowner had not lived in the immediate vicinity of the disputed land for years. Olson, 252 Iowa at 1138, 109 N.W.2d at 445. However, Olson's brother lived on and farmed their land for at least 20 years. Id. 252 Iowa at 1138, 109 N.W.2d at 445. The Olson plaintiff had farmed the disputed triangular tract of land up to the claimed boundary line marked by a fence for over 20 years. Id. 252 Iowa at 1135, 1137, 109 N.W.2d at 443, 444. Based on these facts, the Olson court stated that "[t]he farming operation is readily discernible. A landowner is charged with more than a glance from the road. The denials of knowledge by

defendant are not convincing." *Id.* 252 Iowa at 1138, 109 N.W.2d at 445. Thus, the *Olson* court held that the *Olson* "defendants had such knowledge as to put them on notice of plaintiff's claim." *Id.* 252 Iowa at 1138, 109 N.W.2d at 445.

Similarly under the circumstances presented here, plaintiff's predecessors in title had sufficient opportunities to be put on notice of Pine Lane's claim to the three-post boundary line. Although plaintiff's predecessors in title neither lived on nor farmed the North 80, they had rented the North 80 to the same tenant, Kenneth Mohr, for over 20 years. The trial court found that Dykstra and Mohr had used the three posts as marker posts from 1966 to 1991 and that each farmed close to the three posts. Under such circumstances, plaintiff's predecessors had ample opportunity to know of the claimed three-post boundary line. *See Brown v. Bergman,* 204 Iowa 1006, 1009–10, 216 N.W. 731, 732 (1927) (In refuting plaintiff's argument that defendant never made any claim to either him or his tenant that the fence was the true boundary line, the court stated in part that "[the fence's] very existence, defendant's occupation and use of the land up to the fence, and his maintenance of the fence were open and obvious information of his possession and of his claim of ownership.").

Moreover, we note that acquiescence must, in large part, be determined in light of the factual situation presented. *Mahrenholz v. Alff,* 253 Iowa 446, 451, 112 N.W.2d 847, 849 (1962). Thus, although there was some evidence to the contrary, we defer to the trial court's interpretation of the facts because substantial evidence supports its finding that plaintiff and his predecessor landowners had knowledge of the three-post dividing line sufficient for acquiescence.

3. Finally, the predecessor North 80 landowners' consent to the three-post boundary line is also supported by other substantial evidence. As mentioned, the predecessor owners of the North 80 had knowledge of the controversy over the southern boundary since 1975, but neither Mildred Pashby, Linda Kaufman nor Robert Pashby took any action to establish the survey line as the true boundary line. As noted, a land-

owner's inaction is sufficient to meet the consent element of acquiescence. *Dart,* 261 Iowa at 241, 154 N.W.2d at 84–85; *Bergman,* 204 Iowa at 1009, 216 N.W. at 732 (In response to plaintiff's argument that his tenants rather than he farmed the land only to the claimed boundary fence, the court stated that despite the leases the plaintiffs could have taken action such as an action for removal of the alleged encroaching fence.).

Although Tewes took action such as putting steel posts on the survey line and planting his crop to the survey line once he took possession of the property, his actions were too late. The required ten-year period for acquiescence under Iowa Code section 650.14 had run by the year 1991 when Tewes became the owner of the northern tract.

C. Thus, substantial evidence supports the trial court's finding and conclusion that defendant Pine Lane proved all of the elements of acquiescence, including knowledge and consent. Thereby, Pine Lane established the three-post line, emphasized by the crop residue line, as the boundary line between the two tracts of land.

V. *Disposition.* In view of our above conclusions, we need not address other issues raised in the appeal. The district court judgment is affirmed.

**AFFIRMED.**