# IN THE COURT OF APPEALS OF IOWA

No. 14-1770
Filed October 28, 2015


**RUSSELL T. MAPES and
DEBRA S. KUEHL-MAPES,**
        Plaintiffs-Appellees,

**vs.**

U.S. BANK NATIONAL
ASSOCIATION, N.D.,
        Defendant,

and

**JEROME R. ELEDGE SR.
And LINDA P. ELEDGE,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Pottawattamie County, J. C. Irvin,

Judge.


        The defendants appeal the establishment of a boundary by acquiescence.

**AFFIRMED.**


        Aimee L. Lowe of Telpner, Peterson, Smith, Ruesch, Thomas & Simpson,

L.L.P., Council Bluffs, for appellant.

        Michael J. Winter of The Law Office of Michael J. Winter, Council Bluffs,

for appellee.


        Considered by Vogel, P.J., Tabor, J., and Eisenhauer, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**EISENHAUER, Senior Judge.**

Jerome Eledge Sr. and Linda Eledge appeal from the order establishing a boundary by acquiescence between their property and property owned by Russell Mapes and Debra Kuehl-Mapes. They contend the court erred in finding the existence of a boundary by acquiescence and in denying their counterclaim to have the Mapeses' encroaching swimming pool removed. Because the Mapeses have proved the existence of a boundary by acquiesce, we affirm.

## I.    BACKGROUND FACTS AND PROCEEDINGS.

The Mapeses and the Eledges own adjoining property in Council Bluffs. The Mapeses purchased their property in October 2000 and at some point thereafter placed an above-ground swimming pool on what they believed to be their property. After the Eledges purchased the adjoining property in May 2011, a land survey revealed the boundary line between the properties was six feet from where the Mapeses had believed it to be, and their swimming pool encroached 3.2 feet into the Eledges' property.

The Mapeses filed a petition seeking to quiet title in the six feet of property they had believed to be their property under an acquiescence theory. The Eledges answered and counterclaimed to seek removal of the swimming pool from their property.

The matter went to trial in September 2014. Russell Mapes testified a split-rail fence ran between the properties when he purchased his home in 2000. His realtor informed him the fence, which ran in a straight line between a red post and a phone box, was on the property line. Before the Eledges moved in next door, his neighbors observed the same property line, maintaining the land on

their side of the fence. After the property was surveyed, Jerome Eledge removed the fence.

Frank Wise, who owned the Eledges' property from 1978 until 2002, testified regarding his understanding of the location of the property line during the time he resided on the property. Wise testified, "There was a phone box sitting up on the street, and I used that—that, and then there was a metal post down to the west. And it was a straight line down from that was what I perceived as the property line." Wise testified he found a stake in the ground marking the northeast corner of his property and measured the distance from that stake 112.5 feet south to find the southwest corner of the property, which matched the location of the phone box, the only landmark in that area. Wise further testified he believed the western border of his property was also marked by a red metal post with a white tip, which had been placed in the ground to the north by an unknown person before he had purchased the property. The pole was never moved and remained in the ground when Wise sold the property. Wise testified both he and the owners of the adjoining property recognized the same property line, and both parties maintained the property on their side of that line. The split-rail fence was eventually placed along a portion of the property line.

Frank Pechacek Jr. lives across the street from the Mapeses and the Eledges. The two lots now owned by the parties were vacant when Pechacek moved into his residence, and he has observed the practices of the various property owners of each parcel of land over the years. He testified there is a telephone box on his property he and his neighbors always treated as the property line between their properties. He further testified the telephone box

located directly across the street between the properties at issue is what the owners of those properties always treated as the property line. Pechacek recalled a split-rail fence erected between the lots "basically lined up with the telephone box." He further testified, "Each property owner would mow to the line that would consist of the telephone box and the corner post."

Julie Eggerling and her husband at the time, Thomas Muhlbauer, purchased the property now owned by the Eledges from Wise in 2003. She testified she understood the property line to run between a phone box and a red metal post. She and her husband put up a partial privacy fence along that line. They mowed up to that line but not beyond it.

Michael Ryder was called as a witness for the Eledges. He and his wife bought the property the Mapeses now own in 1978 and sold it in 1997. Ryder recalled a survey was conducted when he purchased the home. His recollection of where the survey stakes were placed is consistent with where the survey conducted when the Eledges purchased the property revealed the boundaries to be. It is also consistent with his testimony he understood the property line to run along the center of a slope constructed between the homes for water drainage purposes. Ryder testified he did not recall a phone box or red post on the property when he lived there. He also testified Frank Wise was his neighbor the entire time he lived on the property and they never had a property dispute.

In an order filed September 23, 2014, the district court specifically found Wise's testimony "to be consistent with other evidence and to be credible." After considering his testimony and the other evidence in the record, the court concluded the Mapeses established a boundary by acquiescence. It determined

the boundary line between the parties' property to be "a straight line marked by the phone box . . . to a red post." After the Eledges filed a motion to enlarge, the court corrected an error contained regarding the location of the red post but otherwise overruled the motion.

## II.    SCOPE OF REVIEW.

Ordinarily our review of an action brought under Iowa Code chapter 650 (2013) is for correction of errors at law. *Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997) (stating an action chapter 650 to establish a boundary is heard on appeal as an ordinary action and reviewed for errors at law). However, the parties agree this case was tried in equity and our review is de novo. *See* Iowa R. App. P. 6.907. Although we are not bound by the district court's fact findings, we give them weight and are especially deferential to assessments of witness credibility. *Perkins v. Madison Cnty. Livestock & Fair Ass'n*, 613 N.W.2d 264, 267 (Iowa 2000).

## III.    ANALYSIS.

The Eledges challenge the sufficiency of the evidence establishing a boundary by acquiescence. Specifically, they challenge the definiteness of the claimed boundary. They also contend constructive or actual notice of an acquiesced boundary must be given to a bona fide purchaser.

Iowa Code section 650.14 states: "If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established." "Acquiescence" is defined as

the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them. Acquiescence exists when both parties acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed.

*Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980). The Mapeses have the burden of establishing acquiescence by clear evidence. *See Tewes v. Pine Lane Farms, Inc.*, 522 N.W.2d 801, 806 (Iowa 1994).

The Eledges first argue there lacks clear evidence concerning the location of the claimed boundary because it is not definitely marked. They claim the boundary found by the district court "is not predicated upon a line or fence having physical properties such as visibility, permanence, stability, and definite location." They note no fence or landscaping has marked the boundary for the requisite ten-year period.

In order to establish a boundary by acquiescence, the boundary must be definitely marked "in some manner." *Sille*, 297 N.W.2d at 381; *see also Mensch v. Netty*, 408 N.W.2d 383, 386 (Iowa 1987) ("We may not resort to conjecture and speculation in locating the boundary lines."). For instance, our supreme court held tire marks were insufficient to establish a boundary line where "[t]he photographic evidence admitted at trial indicated that there are no clearly defined tire marks that have served as a basis for a boundary line for the past ten years." *Mensch*, 408 N.W.2d at 386. However, "a fence or some other consistently solid barrier" is not necessary to establish the boundary line. *Tewes*, 522 N.W.2d at 806. Marked posts through which a boundary line runs can provide "the basis of

a sufficiently definite boundary line" where the posts "represent a distinct division of the parties' property." *Id.*

The Mapeses have established the boundary by clear evidence. There are two definite landmarks on which the property owners had acknowledged as the basis of determining the property line over the years. The phone box and the red post were in place and unchanged for more than ten years, and the evidence shows the property owners recognized and treated these landmarks as establishing the property line.

The Eledges also allege the claim of a boundary by acquiescence "is void against public policy for failure to give notice to a bona fide purchaser for value of a claim against title." We have already determined the boundary was clearly established by the phone box and red post located between the properties. This boundary had been observed by the prior owners of the property for more than ten years before the Eledges purchased it. "'It is well settled that purchasers of property cannot question a boundary line acquiesced in by predecessors in title for more than ten years.'" *Dart v. Thompson*, 154 N.W.2d 82, 84 (Iowa 1967) (quoting *Boyle v. D-X Sunray Oil Co.*, 191 F. Supp. 263, 271-272 (N.D. Iowa 1961)).

Because the evidence supports the Mapeses' claim of a boundary by acquiescence, we affirm. We need not address the Eledges' claim regarding encroachment by the Mapeses' swimming pool.

**AFFIRMED.**