# IN THE COURT OF APPEALS OF IOWA

No. 21-0531
Filed August 3, 2022


**TERRILL A. SAUNDERS and SHIRLEY A. SAUNDERS,**
Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**CONSTANCE J. SNYDER-JOHNSON and DIANE L. MILLER and their unknown heirs, devisees, grantees, assignees, successors in interest and the unknown claimants of the following described real estate situated in Jackson County, Iowa, legally described as, All that part of The Northeast Quarter of the Southeast Quarter of Section Eight (8) Township Eighty-Four (84) North Range Four (4) East of the Fifth Principal Meridian, lying South and West of the center of the public highway known as the Andrew-Spragueville Road, excepting the Northerly five (5) acres (more or less) thereof; And excluding Parcel A according to Plat of Survey dated November 16, 2001 and filed for record November 30, 2001, in Book 1-M, Page 66 of the Office of the Recorder of Jackson County, Iowa.,**
Defendants-Appellees/Cross-Appellants.

_____


Appeal from the Iowa District Court for Jackson County, Tamra Roberts, Judge.

Neighboring landowners appeal and cross-appeal a district court ruling on their competing claims relating to real property. **AFFIRMED.**


David M. Pillers of Pillers & Richmond, DeWitt, for appellants/cross-appellees.

Susan M. Hess of Hammer Law Firm, PLC, Dubuque, for appellees/cross-appellants.


Heard by Bower, C.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Terrill and Shirley Saunders (collectively Saunders) appeal a district court ruling that denied a claim of boundary by acquiescence in which they contend Constance Snyder-Johnson (Connie) and her daughter, Diane Miller, ceded land up to a fence line on Connie's land. Connie cross-appeals, claiming the district court erroneously found she had not established an easement by prescription on Saunders' land. The district court's determination that Saunders failed to establish a boundary by acquiescence and that Connie failed to establish an easement by prescription is supported by substantial evidence. Accordingly, we affirm.

I.     **Background Facts & Proceedings**

Terrill and Connie are first cousins. Their grandparents previously owned the land in dispute.[1] Connie purchased roughly twenty acres from her grandfather in 1972. Sometime that same year, Terrill was instructed by his grandfather to replace a fence on Connie's property that their grandfather had used to keep livestock off the land suitable for crops. According to a survey done in 2019, the fence is anywhere from 429 to 211 feet north of the southern boundary of Connie's property. The distance varies as the fence meanders along the property. The land between the fence and Connie's property line, which is predominately cropland but bounded by timber on its western edge, is the land subject to this dispute.[2] The fence does not run across the whole property; it shifts north back into Connie's

---

[1] This farm has been in the family since early 1921, when the parties' great grandfather, William McCutcheon, was deeded eighty acres, more or less, for consideration of $11,200.00. After his death twelve years later, the land was deeded to Harry McCutcheon, one of William's nine children, who later deeded the property to his grandson, Terrill.

[2] The disputed land consists of approximately 7.9 acres.

property on either end. Both parties agree the fence was intended to keep livestock—particularly horses—off cropland to the south of the fence. Terrill asserts the fence is a boundary fence separating Connie and his grandfather's land. The fence has remained in the same spot since 1972.

After purchasing her property, Connie continued to let her grandfather farm the cropland up to the fence. Terrill assisted his grandfather with the farming. Terrill obtained the land to the south of Connie's property in 1977 on contract from his grandparents and continued to farm the land, including the disputed property.[3] Terrill and Connie's grandfather passed away in 1987. Terrill retired from farming sometime in the mid-1980s and rented out the land.

Connie bought another eighty acres in 1992, located to the west of both her property and Terrill's property. The deed for this land purchase included a provision for a right of way over Terrill's property "to the public road for a means of ingress and egress to the lands" provided to Connie.[4] The Saunders, however, were not signatories to the deed. The land that connects Connie's original twenty acres with the western eighty acres is hilly and forested. There are several deer trails and all-terrain vehicle (ATV) trails, but Connie cannot move heavy equipment to her land in the southern half of the property.

Connie has used a path across Terrill's land that connects to the public road on the east side of her property and Terrill's property to access the field in her western property. She claims she has a right to such path because of the deed she obtained in 1992. She also claims she has to use the path because of the

---

[3] Terrill received the deed to the property south of Connie's land in 1980.
[4] The grantors of this eighty acres were Terrill's parents.

impracticality of traveling through her own property. Connie requested that Terrill grant an easement across his property, which he rejected. Despite the rejection of the requested easement, Connie testified that she continued to cross Terrill's land until around 2016, when Terrill fenced off the trail. While Connie previously rented out the tillable land on her western eighty acres, she has not done so since the mid-1990s. Since then, the land has been in the Conservation Reserve Program (CRP).[5] Connie eventually sold about two of her original twenty acres abutting the fence line on its north side to her daughter, Diane.

Connie and Terrill's use of the disputed land has been consistent for the past several decades. Connie and Diane's families ride horses, ATVs, snowmobiles, and minibikes on the property. They have also used the property to cut and collect firewood.[6] Their land to the north of the fence has consistently contained horses, which are prevented from grazing in the crop field to the south by the fence. Connie pays the property taxes for the disputed property. Terrill, in contrast, has rented the disputed property to several different individuals. The tenants farmed hay, oats, and corn. Terrill has collected the rent revenue and included it on his tax returns. He included the disputed land in an appraisal done on his property. He also placed the property in the CRP from 2003 to 2013. Both parties contend they performed maintenance tasks on the property—Terrill claims to have mowed and cleaned out the fence line, while Connie also claims to have

---

[5] The Conservation Reserve Program is a program administered by the United States Department of Agriculture (USDA) that pays property owners to leave farmland idle to conserve wildlife and natural resources. It requires the owner to remove certain invasive species and can require the owner to perform certain maintenance tasks like mowing or burning the field.

[6] Diane testified that she used the property pursuant to Connie's permission.

mowed the land and picked up fallen branches. Neither party requested the other to cease their use of the land until the current dispute began.

The instant controversy began in 2019 when Connie elected to place certain portions of her land in CRP. During her enrollment in the program, Connie was informed that some of her land was already enrolled in the program by Terrill. Connie had the land surveyed in 2019 and erected a boundary fence along the legal boundary. As a result, Terrill filed a petition in July 2019, alleging trespass by Connie and sought to quiet title to the disputed land. Terrill also alleged a boundary by acquiescence along the fence line and claimed to have adversely possessed the disputed property. Connie filed an answer broadly denying Terrill's claims and counter-claimed alleging an easement by prescription over the trail that connects Connie's eighty acres to the public road.

A trial was held in early February 2021. The district court denied all of Terrill's claims. In particular, the court found that the parties had not mutually recognized the fence as a boundary and that the fence was not definite enough to constitute a boundary. The court also found that Connie lacked sufficient notice of Terrill's claim to the property to warrant a duty to prohibit Terrill's use. The court denied Connie's counter-claim, finding the easement was unnecessary and that Connie did not meet her burden of proving her use was hostile and open for ten years. Both parties appeal.[7]

---

[7] Terrill appeals only the portion of the district court's ruling denying his claim of boundary by acquiescence.

## II.    Standard of Review

Terrill brought his boundary-by-acquiescence claim under Iowa Code chapter 650 (2019).  An appeal from a chapter 650 action is heard as "an action by ordinary proceedings."  Iowa Code § 650.15.  Thus, our review is for errors of law.[8]  *Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997).  "The district court's judgment has the effect of a jury verdict; thus, we are bound by the district court's findings of fact if supported by substantial evidence."  *Id.*  "[E]vidence is substantial if 'reasonable minds would accept the evidence as adequate to reach the same findings.'"  *Lund v. Siegert*, No. 20-1525, 2022 WL 1100319, at *2 (Iowa Ct. App. Apr. 13, 2022) (alteration in original) (citation omitted).

The parties do not address what the appropriate standard of review is for Connie's claim of an easement by prescription.

> Whether the district court tried a proceeding in equity or at law is determinative of our scope of review on appeal.  If the district court tried the case at law, our review is for correction of errors of law.  If tried in equity, our review is de novo.  If there is uncertainty about the nature of a case, an often-used litmus test is whether the trial court ruled on evidentiary objections.  When a trial court does rule on objections, it is normally the hallmark of a law trial, not an equitable proceeding.

*Woodroffe v. Woodroffe*, No. 13-2034, 2015 WL 1546365, at *2 (Iowa Ct. App. Apr. 8, 2015) (citations omitted).  Here, the district court ruled on objections at trial.

---

[8] The parties disagree as to the appropriate standard of review.  We recognize some cases analyzing boundary-by-acquiescence claims have used a de novo review.  *See, e.g.*, *Albert v. Conger*, 866 N.W.2d 877, 879–80 (Iowa Ct. App. 2016); *Paseka v. Weaver Farms Ltd. Liab. Co.*, No. 03-0417, 2004 WL 573788, at *2 (Iowa Ct. App. Mar. 24, 2004).  However, our court has only used a de novo standard when the parties agreed it was the proper standard, *see Conger*, 866 N.W.2d at 880, or when the underlying action did not follow the statutory formalities of chapter 650.  *See Paseka*, 2004 WL 573788, at *2.  Neither is applicable here.

Thus, the proper review is for correction of errors at law. *Id.* The court's findings of fact are binding on us if supported by substantial evidence. *See* Iowa R. App. P. 6.904(3)(a).

**III.    Discussion**

Terrill contends the district court incorrectly rejected his claim that the fence was the border of his land based on the doctrine of boundary by acquiescence. Connie counter-claims, claiming the district court should have found she had an easement by prescription connecting her western eighty acres with the public road.

**A.    Boundary by Acquiescence**

Iowa Code section 650.14 provides, "If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established." Our supreme court has described the doctrine as follows:

> It is the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them. Acquiescence exists when both parties acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed.

*Ollinger*, 562 N.W.2d at 170 (quoting *Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980)).

Both landowners "must have knowledge of and consented to the asserted property line as the boundary line." *Tewes v. Pine Lane Farms, Inc.*, 522 N.W.2d 801, 806 (Iowa 1994). However, "[a]cquiescence need not be specifically proven;

it may be inferred by the silence or inaction of one party who knows of the boundary line claimed by the other and fails to take steps to dispute it for a ten-year period." *Id.*; *accord Conger*, 886 N.W.2d at 881–82 (citation omitted) ("It is sufficient knowledge if both parties are aware of the fence or other line and of the fact that both adjoining landowners are, for the required period, treating it as a boundary"). Importantly, "mere denial of knowledge of the existence of a fence or some other marker demarcating a boundary, or of a claim of ownership thereto will not defeat the claim of acquiescence to the boundary 'if the circumstances are such that [the landowner] should be required to take notice thereof.'" *Conger*, 886 N.W.2d at 881 (quoting *Tewes*, 522 N.W.2d at 807).

Our courts have also recognized that the proposed boundary line "must be known, definite, and certain, or known and capable of ascertainment. The line must have certain physical properties such as visibility, permanence, stability, and definite location." *Heer v. Thola*, 613 N.W.2d 658, 662 (Iowa 2000) (quoting 12 Am. Jur. 2d *Boundaries* § 86, at 487 (1997)). Additionally, the parties must acquiesce to the fence as a boundary, rather than a barrier with some other purpose. *Ollinger*, 562 N.W.2d at 170 (quoting *Brown v. McDaniel*, 156 N.W.2d 349, 352 (Iowa 1968)); *see also Heer*, 613 N.W.2d at 662 (noting that even where the fence is a definite boundary "[A] fact question might still exist as to whether the parties intended that a fence or other marker was to be treated as a boundary rather than for some other purpose such as a barrier for livestock"). The party seeking to establish the new boundary must prove acquiescence by clear evidence. *Tewes*, 522 N.W.2d at 807. Our analysis "requires an inquiry into the factual circumstances of each case." *Ollinger*, 562 N.W.2d at 171.

The district court found Terrill had not established a boundary by acquiescence. In particular, the court found there was not mutual recognition of the fence as a boundary, the fence line did not constitute a definite line, and Connie lacked the notice necessary to establish inferred knowledge of Terrill's purported boundary.

Initially, we disagree with the district court that the irregular shape and construction of the fence preclude its use as a boundary. Our courts have held that a "wavy" boundary "does not render the demarcation indefinite, where the landowners recognized the demarcation as the boundary." *Lucas v. Forrester*, No. 05-1847, 2007 WL 601567, at *2 (Iowa Ct. App. Feb. 28, 2007); *accord Tewes*, 522 N.W.2d at 806 (although "the boundary line did not form a perfectly straight line . . . the three posts and crop residue formed the basis of a sufficiently definite boundary line"). The somewhat meandering course of the fence between Connie and Terrill's property does not preclude its use as a boundary. We also question whether the material make-up of a fence line that by all accounts has been in the same condition for nearly fifty years is relevant. The district court noted how Terrill's exhibits each showed slightly different boundaries for the contested field. That said, those differences were largely limited to the southern portion of the field, which would not make up the boundary Terrill claims. And it was uncontested at trial that the fence line was visible and consistent over the past fifty years.

But the fence does not run the course of the entire property. Instead, it turns north on its western and eastern edges, and continues up into Connie's property. Such a shape aligns with Connie's argument that the fence was intended to contain livestock to a certain area—the looping shape would fully contain the horses. None

of the parties could identify where the property line would lay on either end of the fence. Thus, the fence is not definite enough to form a boundary for the properties.

Terrill also failed to establish both parties acknowledged and acquiesced to the fence serving as a boundary. Connie and her family did not expressly acquiesce, unanimously testifying that they believed the fence only served to contain their livestock.[9] Connie also did not acquiesce via notice and silence. Connie testified that she permitted Terrill to farm the land in question based on long-standing family practice. Thus, his practice of renting out the farm, performing maintenance, and placing it in CRP would be insufficient to put Connie on notice of a new boundary. While this court has previously held that use was not permissive when the legal owner never authorized the moving party's use, *see Lund*, 2022 WL 1100319, at *3, we must examine each case in light of its unique facts. *Ollinger*, 562 N.W.2d at 171. The family's unique practices, including Connie permitting her grandfather to keep farming on her land, point to such use being permissive. And Terrill's reporting the rental income on his tax returns and using the land in an appraisal could not put Connie on notice because she would have no reason to know of either.

Moreover, Connie and her family continued to use the land themselves. Testimony at trial was consistent concerning Connie and her family's use of the land to ride horses, motorbikes, and snowmobiles, as well as to collect firewood. Diane and her fiancé conveyed that their use was pursuant to Connie's permission,

---

[9] To the extent both Connie and Terrill offered other witnesses' testifying to where they believed the boundary was, such is not dispositive to this case. *See Tewes*, 522 N.W.2d at 807 ("Our decisions and other authorities demonstrate that the landowner [themselves] must satisfy the knowledge requirement.").

suggesting Connie retained the belief that she owned the land. Connie also paid property taxes on the property, further suggesting she believed she owned the property.

We recognize that some evidence suggests Connie acquiesced to the boundary. She put other parts of her property into CRP in the past, but the land in question was put into CRP by Terrill.[10] Connie knew the land was being farmed, but did not demand rent from Terrill or the tenant farmers.[11] She also testified that she assumed Terrill had placed the land into CRP when it lay uncultivated, suggesting some level of control over the property by Terrill. And there was some contradictory testimony about who maintained the land. However, "to the extent the testimony diverged, it was the district court's prerogative to resolve the inconsistencies." *See Lund*, 2022 WL 1100319, at *3 (quoting *Jaeger v. Manemann*, No. 19-1022, 2020 WL 1888768, at *2 (Iowa Ct. App. Apr. 15, 2020)). Given our substantial-evidence review, we affirm the district court concerning the boundary by acquiescence.

### B. Easement by Prescription

Connie claims the district court incorrectly found she had not established an easement by prescription over Terrill's property. "Under Iowa law, an easement by prescription is created when a person uses another's land under a claim of right or color of title, openly, notoriously, continuously, and hostilely for ten years or more." *Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001); *accord* Iowa Code

---

[10] The USDA acknowledged an error in the failure to include the disputed property in Connie's CRP.

[11] One of the tenants also rented property owned by Connie.

§ 564.1. The concept is similar to adverse possession, and we apply adverse possession principles to establish an easement. *Collins Tr. v. Allamakee Cnty. Bd. of Supervisors.*, 599 N.W.2d 460, 463—64 (Iowa 1999). But whereas adverse possession is concerned with acquisition of title to property, an easement by prescription concerns the use of property. *Id.* at 464. The party seeking an easement "must also show they claimed an easement as of right, and this must be established by evidence distinct from and independent of their use." *Kaster*, 637 N.W.2d at 178; *accord* Iowa Code § 564.1. "The facts relied upon to establish a prescriptive easement 'must be strictly proven. They cannot be presumed.'" *Woodroffe*, 2015 WL 1546365, at *4 (quoting *Simonsen v. Todd*, 154 N.W.2d 730, 736 (Iowa 1967)).

Connie failed to establish her use of the path leading from the public road to her property west of Terrill's land was hostile. "Hostility of possession does not imply ill will, but only an assertion of ownership by declarations or acts showing a claim of exclusive right to the land." *Id.* Connie testified that she asked Terrill for an easement. He denied her request. However, Connie clarified that "[Terrill] gave me permission to go through there."[12] "[P]ermissive use of land is not considered adverse." *Collins Tr.*, 599 N.W.2d at 464 n.1. Terrill permitting Connie to use the pathway shows her use was not hostile. Thus, she fails to establish an easement by prescription.

---

[12] Terrill's attorney asked the following clarifying question:
> Q. Okay. He gave you permission to go through there but he never granted you an easement, correct? A. As I understand it, yes.

Connie also failed to establish a claim of right.[13] "Evidence tending to show hostility and claim of right to satisfy the requirements of a prescriptive easement is of a similar nature." *Kaster*, 637 N.W.2d at 178. "A party claiming an easement by prescription must prove, independent of use, the easement was claimed as a matter of right." *Collins Tr.*, 599 N.W.2d at 464; *accord* Iowa Code § 564.1. A common example of evidence indicative of a claim of right is maintenance or construction of the land claimed. *See Kaster*, 637 N.W.2d at 179 (citing *Lynch v. Lynch*, 34 N.W.2d 485, 490 (1948)).

Connie appears to allege a claim of right based on the need for the easement to access the field on the western side of her property. However, we agree with the district court that an easement is unnecessary. Connie testified that she can access the western eighty acres from the twenty acres she lives on via deer trails and ATV trails. While the terrain is hilly and wooded, she testified that she was able to move a side-by-side to the field. Moreover, the field she seeks access to has been in CRP since the mid-1990s. She testified that she must burn the field rather than mowing it, but such maintenance is permitted under CRP. Given the limited use of the field, Connie has no reason to bring heavy equipment through Terrill's property. Also, Connie owns property contiguous to the property

---

[13] To the extent Connie claims a color of title based on the 1992 deed purporting to include an easement over Terrill's land, such is unpreserved for our review. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Connie's answer and counter-claim asserted only a claim of right, not color of title. Additionally, the district court expressly declined to consider an allegation of color of title, noting, "the defendant's did not allege a color of title claim in their counterclaim."

in question.   Thus, Connie failed to demonstrate a claim of right, and has not established an easement by prescription.

**AFFIRMED.**