# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0068
Filed February 25, 2026

———————————

**David G. Behrens and Carmona Behrens,**
Plaintiffs–Appellees,

v.

**Mark Thomsen and Kimberly Thomsen,**
Defendants–Appellants.

———————————

Appeal from the Iowa District Court for Benton County,
The Honorable Christopher L. Bruns, Judge.

———————————

**AFFIRMED**

———————————

Corey R. Lorenzen of Lorenzen Law Firm, P.C., Waterloo,
attorney for appellants.

Austin G. Collins and Phillip D. Klinger (until withdrawal) of Klinger,
Robinson & Ford, LLP, Cedar Rapids, attorneys for appellees.

———————————

Considered without oral argument
by Tabor, C.J., and Ahlers and Langholz, JJ.
Opinion by Langholz, J.

1

**LANGHOLZ, Judge.**

When it comes to property boundaries, being neighborly has its limits. It is one thing to let your neighbors on your land to hunt or pass through occasionally. But it is quite another to sit back and let them restore, develop, maintain, and use your land for years on end under a false impression of ownership. Taking that second course may invite Iowa law to step in and create a new boundary line if you and your neighboring landowner recognize and acquiesce—explicitly or implicitly—to the new boundary for at least ten years. That happened here.

Mark and Kimberly Thomsen own land in Vinton. As a neighborly gesture, they built a fence about thirty feet shy of the southern boundary, to keep their livestock from grazing too close to their neighbors. But when new neighbors—David and Carmona Behrens—moved into the southern plot, the Behrenses mistakenly believed they owned everything up to the fence. And they acted accordingly—clearing junk, planting and removing trees, mowing, decorating, burying pets, and remedying storm damage. All the while, the Thomsens did not disturb or intervene in their efforts. The Behrenses' uninterrupted use continued from roughly 1994 until at least 2016, when they learned they did not own the roughly half-acre of land south of the fence. After unsuccessfully trying to resolve the boundary issue with the Thomsens, they sued. The district court found the Behrenses proved their boundary-by-acquiescence claim, and the Thomsens now appeal.

Our scrutiny of the record reveals that substantial evidence supports the district court's ruling. To be sure, the Thomsens point us to evidence that cuts the other way. But under the governing standard of review, we only ask whether substantial evidence supports the findings the district court actually made. And through that lens, we find sufficient evidence that the

Behrenses believed the fence was the property boundary and the Thomsens implicitly acquiesced to their ownership for at least ten years. We thus affirm and do not address the Thomsens' other arguments that the court should have reached and rejected the Behrenses' two alternative claims for relief.

I.

The Thomsens bought a northern parcel of land in Vinton in 1985. Soon after, they placed a fence about thirty feet from the southern boundary line of their property. They chose the location because, at the time, they kept livestock on the land and thought it was courteous to have a buffer between the livestock and the adjoining property to the south. Indeed, the home on the southern property is built near the boundary line, so they wanted to avoid livestock grazing so close to their neighbor's home. The land between the fence and boundary line is a wooded, roughly half-acre rectangular parcel, which the parties refer to as the "disputed property."

In 1993, David and Carmona Behrens bought the southern property. When they did so, they believed the fenceline was the boundary and that they owned all the land up to the fence, including the disputed property. While the legal description of the land excluded the disputed property, their pre-purchase appraisal included it. So did their property taxes.

The property was a "disaster" when the Behrenses bought it. The land was covered with horse nettles and trees, and it had a "large junk area that extended into the disputed property that needed to be cleaned up." So right after moving in, they went to work clearing junk and restoring the land. A year later, they installed a new septic system, which terminated into the disputed property. And going forward, they generally maintained the disputed property in the same fashion as the rest of their land, investing

significant time and resources in its upkeep, particularly after two severe storms. The Thomsens allowed this upkeep and improvement, never interfering with or objecting to the Behrenses' use or development of the disputed property.

This state of affairs continued until 2016, when the Behrenses received notice from the county assessor that they owned fewer acres than they thought. The Behrenses raised the issue with the Thomsens, who said that they had always known the boundary line in fact was beyond the fenceline. Mark also told them not to worry about it, that they could keep using the land, and he would not move the fence on them. And the Behrenses continued to maintain the disputed property for several more years while also trying to resolve the boundary issue with the Thomsens. But in 2021, the Behrenses filed this suit, seeking to officially establish the fenceline as the boundary either though adverse possession or statutory acquiescence under Iowa Code chapter 650 (2021). In the alternative, they sought unjust-enrichment damages from the Thomsens.

After a one-day bench trial, the district court entered judgment for the Behrenses on their statutory boundary-by-acquiescence claim. It held that the Behrenses treated the fenceline as the true boundary and that "[t]he Thomsens' silence in the face of the obvious use of the property by the Behrens was acquiescence to the fence becoming the property line." So the court established the fenceline as the boundary between the parties' properties. And it declined to reach the Behrenses' alternative adverse-possession and unjust-enrichment claims because they were moot.

After unsuccessfully moving under Iowa Rule of Civil Procedure 1.904 for the court to expand its ruling to reach and reject the two alternative claims on the merits, the Thomsens now appeal.

II.

Because boundary-dispute appeals are "heard as in an action by ordinary proceedings," we review for correction of errors at law. *See* Iowa Code § 650.15; *Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997). The district court's findings are akin to a jury verdict, and we will affirm so long as they are supported by substantial evidence. *Ollinger*, 562 N.W.2d at 170; *Tewes v. Pine Lane Farms, Inc.*, 522 N.W.2d 801, 804 (Iowa 1994). And viewing the record with an eye toward sustaining the district court's findings, we ask whether "the evidence supports the findings actually made," not whether substantial evidence could have supported a different outcome. *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996); *see also Kaperonis v. Iowa State Highway Comm'n*, 100 N.W.2d 901, 902 (Iowa 1960) (noting the "heavy burden" under substantial-evidence review).

To create a new property boundary by acquiescence, a petitioner must show clear evidence that the desired boundary "has been recognized and acquiesced in by the parties" for at least ten straight years. Iowa Code §§ 650.6, .14 (providing that if the court finds the new boundary has "been so recognized and acquiesced in," the boundary "shall be permanently established"); *Harvey v. Platter*, 496 N.W.2d 350, 352 (Iowa Ct. App. 1992). Acquiescence is "the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them." *Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 49 (Iowa 2024) (cleaned up).

While both parties must ultimately "acknowledge and treat the line as a boundary," express recognition is not necessary—"acquiescence may be inferred by the silence or inaction of one party who knows of the boundary line claimed by the other and fails to take steps to dispute it for a ten-year

5

period." *Ollinger*, 562 N.W.2d at 170–71 (cleaned up). It may too be found when "a person who knows that he is entitled to impeach a transaction or enforce a right neglects to do so for such a length of time that, under the circumstances of the case, the other party may fairly infer that he has waived or abandoned his right." *Dwight v. City of Des Moines*, 156 N.W. 336, 338–39 (Iowa 1916).

There is no real dispute that substantial evidence shows the Behrenses believed and acted like they owned the disputed property. But acquiescence "involves more than a mere establishment of a line by one party, and the taking of possession by him." *Griffin v. Brown*, 149 N.W. 833, 838 (Iowa 1914). So the fighting issue here is whether substantial evidence supports the district court's finding that the Thomsens implicitly acquiesced to the fenceline boundary for at least ten years. According to the Thomsens, they always believed they owned the disputed property, they permitted the Behrenses to enter and use the disputed property shortly after moving in, the Behrenses' use of the property was sparing until 2011, and they expressly communicated their ownership in 2016, defeating any ten-year period of acquiescence. But carrying forward the district court's informed credibility determinations, we find substantial evidence supports the court's ruling.

The Behrenses openly developed the disputed property soon after buying their property in September 1993—clearing junk and debris, removing trees, and mowing. About a quarter of the junk area fell within the disputed property, and the Behrenses cleared it over time without any contribution or acknowledgment by the Thomsens. Although the Thomsens indeed permitted the Behrenses to enter other parts of their land around this time, that permission was limited to hunting pheasants in their cornfield.

About a year after buying their land, the Behrenses installed a new septic system. The project involved bulldozing a "shocking" number of trees and changing much of the landscape, including in the disputed property. The new septic lines terminated in the disputed area. Again, the Thomsens never objected to or questioned the developments.

The Behrenses then continued to use the land in a way that exceeded benign neighborly accommodations. Beyond regularly maintaining the plot in the same fashion as the rest of their land, they buried the family dog on the disputed property in 2002 or 2003. And they buried several more pets there in the years that followed. For their part, the Thomsens rarely crossed over the fence—no neighbor testified to seeing Mark in the disputed property. And when Mark sprayed for weeds, he stopped at the fenceline.

But perhaps the clearest evidence of acquiescence came after a derecho swept through central Iowa in 2011. The storm ravaged the Behrenses' property, and they hired workers to clear over ninety fallen trees, some of which were in the disputed property. One worker spent two or three weeks grinding stumps, and he worked up to the fenceline. The Thomsens never suggested the storm damage within the disputed property was their responsibility or otherwise contributed to the cleanup. After 2011, the Behrenses continued to maintain the land—alerting the Thomsens to a dead tree that threatened the fence in 2019 and clearing the storm damage after the 2020 derecho. Again, the Thomsens never contributed or enforced their rights.

In all, the Thomsens remained silent from at least 1994 to 2016 while the Berhens restored, decorated, and developed the disputed property. That degree of assent, for over twenty straight years, supports the finding the Thomsens "waived or abandoned" their rights. *Dwight*, 156 N.W. at 338–39.

And it aligns with similar cases finding implicit acquiescence. *See Atkins v. Reagan*, 60 N.W.2d 790, 791–92 (Iowa 1953) (affirming boundary-by-acquiescence claim because original owner knew the neighbors were making material improvements within her land but chose not to "molest them in their occupancy" for over ten years); *Olson v. Clark*, 109 N.W.2d 441, 445 (Iowa 1961) (finding party was on notice of the other's use and claimed ownership of property and nevertheless "remained silent for the statutory period").

"[A]cquiescence must, in large part, be determined in light of the factual situation presented." *Tewes*, 522 N.W.2d at 808. While the Thomsens indeed offered "some evidence to the contrary, we defer to the trial court's interpretation of the facts because substantial evidence supports its finding that" they knew of the Behrenses' belief of ownership and opted to sit silent for at least ten straight years. *Id*. We thus affirm judgment for the Behrenses.[1]

**AFFIRMED.**

---

[1] The Thomsens also argue that the district court should have reached and rejected the Behrenses' two alternative claims: adverse possession and unjust enrichment. But they do not meaningfully explain why the claims are not moot—as the district court ruled—or why any exception to mootness applies. Because we affirm on the boundary-by-acquiescence claim, any analysis of the merits of these others claims would be purely academic. *See generally Homan v. Branstad*, 864 N.W.2d 321, 328 (Iowa 2015). So we decline to address their merits.